# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two Apple iPhones, One Samsung Galaxy Phone and<br>One BLU Phone Located at 1801 Stanley Road<br>Greensboro, North Carolina | )<br>)<br>)<br>)<br>)<br>) | Case No. 1:22MJ 534 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Benjamin L. Crocker by GRM

*Applicant's signature*

Benjamin L. Crocker, Special Agent, ATF

*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:  12/29/22

*Judge's signature*

City and state:  Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge

*Printed name and title*

# ATTACHMENT A

## *Property to be searched*

The property to be searched is as follows:

a. **TARGET DEVICE 1**: silver Apple iPhone with a black case.



**TARGET DEVICE 1** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 1** for the purpose of identifying the electronically stored information described in Attachment B.

b. **TARGET DEVICE 2**: is a silver Apple iPhone with a black case and

WOODS photo on the home screen.



**TARGET DEVICE 2** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 2** for the purpose of identifying the electronically stored information described in Attachment B.

c. **TARGET DEVICE 3**: is a Samsung Galaxy with a reddish-brown case and broken screen.



**TARGET DEVICE 3** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 3** for the purpose of identifying the electronically stored information described in Attachment B.

d. **TARGET DEVICE 4**: is a BLU phone with no case.



**TARGET DEVICE 4** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 4** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **TARGET DEVICES** described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) (distribution of a controlled substance) and U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon) and involve WOODS:

      a. Electronic communications between WOODS and co-conspirators both known and unknown;

      b. lists of customers and related identifying information;

      c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      e. all bank records, checks, credit card bills, account information, and other financial records.

      f. all photos or communications relating to the use, sale or possession of firearms/narcotics.

2.      Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
TWO APPLE IPHONES, ONE
SAMSUNG GALAXY PHONE AND
ONE BLU PHONE RECOVERED
DURING SEARCH WARRANT
EXECUTED ON 210 INVERNESS ST
NE WINSTON SALEM, NC

Case No. 1:22 MJ 534

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Special Agent Benjamin L. Crocker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     Currently, I am investigating the firearm possession and drug distribution activities of Arkeem Davon WOODS in the Middle District of North Carolina. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of multiple electronic devices which are currently in law enforcement possession, and the extraction from the devices of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since August 2019. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the

investigation of firearms, controlled substances, arson, and explosives offenses. I have participated in investigations involving all these areas. Prior to my career with ATF, I worked for the South Carolina Highway Patrol in South Carolina for approximately 6 years. During my tenure with the South Carolina Highway Patrol, I served as a Patrolman, Advanced Special Response Team member and on the Criminal Interdiction Team. During my career in law enforcement, I have been involved in numerous complex case investigations involving federal or state firearms and controlled substance violations. Prior to my career in law enforcement, I attended The Citadel and graduated in 2013 with a Bachelor of Arts Degree in Criminal Justice.

3.     I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing narcotics, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among narcotics traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with numerous investigations regarding the unlawful possession, use, and distribution of narcotics during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use

of search warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.     The property to be searched shall be referred to as the "**TARGET DEVICE 1**." **TARGET DEVICE 1** is a silver Apple iPhone with a black case. A photograph of the **TARGET DEVICE 1** has been attached to this application for further identification.

6.     The property to be searched shall be referred to as the "**TARGET DEVICE 2**." **TARGET DEVICE 2** is a silver Apple iPhone with a black case and WOODS photo on the home screen. A photograph of the **TARGET DEVICE 2** has been attached to this application for further identification.

7.     The property to be searched shall be referred to as the "**TARGET DEVICE 3**." **TARGET DEVICE 3** is a Samsung Galaxy with a reddish-brown case and broken screen. A photograph of the **TARGET DEVICE 3** has been attached to this application for further identification.

8.     The property to be searched shall be referred to as the "**TARGET DEVICE 4**." **TARGET DEVICE 4** is a BLU phone with no case. A photograph of the **TARGET DEVICE 4** has been attached to this application for further identification.

9.     **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** are currently located at the ATF Greensboro Field Office in Greensboro, NC.

10.    The applied-for warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.    On November 16, 2022, an ATF Confidential Informant (hereinafter, CI) met an individual who named Luis Fernando Calleja Perez who stated they could sell the CI quantities of powder cocaine.[1]  On this same date, Perez provided the CI a sample of powder cocaine for $60.00.  The CI acquired Perez's telephone number and the two (2) agreed to conduct a future transaction.

12.    On November 17, 2022, the CI contacted Perez and arranged for Perez to sell one (1) ounce of powder cocaine, which Perez stated would cost $1,100.00.  Perez informed the CI that the transaction would be conducted at his residence, 4217 Mineral Avenue, Winston Salem, North Carolina.  On this same date, the CI, accompanied by two (2) ATF Special Agents (hereinafter, UC1 and UC2), both acting in an undercover capacity, traveled to Perez's residence to conduct the transaction.  Once the UCs and the

---

[1] The CI was compensated by ATF for his/her services and has a history of criminal convictions including at least one felony conviction.

CI arrived, the CI contacted Perez who stated he was in route. When Perez arrived, he informed UC1 and the CI that his source of supply (hereinafter, SOS) was in route to the residence.

13. After waiting several minutes, the SOS arrived at the residence. Perez entered the front passenger seat of a white, 2008 Chrysler Aspen, North Carolina license plate number TMR3672. A query of the National Crime Index Center (hereinafter, NCIC) showed the vehicle to be registered to Woods. Perez motioned for the UC to enter Woods' vehicle, which he did. The CI stood at the open rear passenger door where the UC was seated. UC observed Woods sitting in the driver seat, verified by the UC viewing a North Carolina driver's license photograph of Woods following the transaction.



Woods DL Picture

14. The UC observed Woods was armed with a silver and black firearm that was tucked into his pants, on his right hip. Woods handed the UC a clear plastic bag containing what the UC believed to be powder cocaine based on its appearance. Woods asked the UC and the CI to test the cocaine, which both refused. The UC paid Woods $1,100.00 to complete transaction. Woods expressed to the UC that the provided powder cocaine was

"fresh off the brick." Woods also showed the UC clear plastic bags containing purported crack cocaine and marijuana. Woods provided his telephone number to the UC as 336-866-9796, which was found to be associated with him in a law enforcement database. WOODS then provided a second phone number of 336-934-0059. WOODS stated that the first number he provided was his old number.



15.     This transaction was audio/video recorded and the funds used for the purchase were prerecorded. ATF conducted a field-test of the cocaine hydrochloride and it tested positive for the presence of cocaine and weighed approximately 29.62 grams. The cocaine hydrochloride was sent to the Drug Enforcement Administration (DEA) laboratory for analysis and the results are pending.



16.     It should be noted, Woods was known to ATF and previously identified during a separate, independent investigation. On October 26, 2022, while conducting an undercover purchase of methamphetamine from a residence in Winston Salem, North Carolina, a different UC observed Woods exiting 210 Inverness St NE, which was next door to the residence the UC was standing in front of. The UC observed several individuals enter and exit quickly from 210 Inverness St NE, to include one (1) individual carrying what the UC believed to be crack cocaine. The UC observed four (4) different individuals walk inside 210 Inverness St NE and exit within one (1) minute, which the UC believed to be indicative of drug trafficking activity. The UC also observed Woods' vehicle parked in the driveway. Woods was eventually observed leaving 210 Inverness St NE. The UC positively identified Woods from his North Carolina driver's license photograph.



17. On November 29, 2022, the UC communicated directly with Woods via telephone and arranged to purchase one (1) ounce of powder cocaine for $1,100.00. Woods directed the UC to meet him at the North Side Shopping Center, located at 3505 Patterson Avenue, Winston Salem, North Carolina. The UC and the CI traveled to the location and waited for Woods to arrive. While waiting, ATF surveillance observed Woods depart from 210 Inverness St NE and drive to 274 West 24th Street and then to the North Side Shopping Center.



18. When Woods arrived, he directed the UC to the rear passenger seat of Woods' vehicle. When the UC entered Woods vehicle, the UC observed a small child sitting in the front passenger seat. The UC smelled a strong odor of marihuana and

observed Woods to be smoking what appeared to be a marihuana blunt by appearance and smell. Woods handed the UC a clear plastic bag, which the UC believed to be the previously discussed powder cocaine based on its appearance. In return, the UC handed Woods $1,100.00 to complete the transaction. Prior to exiting, the UC referenced the firearm Woods had brandished during the November 17, 2022, transaction. Woods could not remember if he quoted the UC a price for a firearm during that transaction. Woods stated during that transaction "I had an extra one on me, but I ain't got no extra one" currently. Woods stated he would contact the UC in the near future regarding selling UC a firearm.

19.     Following the transaction, Woods was observed driving back to 274 West 24th Street and then back to 210 Inverness St NE.

20.     This transaction was audio/video recorded and the funds used for the purchase were prerecorded. ATF conducted a field-test of the cocaine hydrochloride and it tested positive for the presence of cocaine and weighed approximately 29.07 grams. The cocaine hydrochloride was sent to the Drug Enforcement Administration (DEA) laboratory for analysis and the results are pending.



21.    On or about December 1, 2022, Woods informed the UC via telephone that he had an associate selling a firearm and the price would be $650.00, to which the UC agreed to purchase on December 2, 2022. Woods again directed the UC to the North Side Shopping Center, 3505 Patterson Avenue, Winston Salem, North Carolina. While waiting for Woods to arrive, ATF surveillance watched 210 Inverness St NE and observed Woods in the driveway. Woods was observed leaving 210 Inverness St NE while the UC was waiting, and eventually returned to 210 Inverness St NE. Woods eventually told the UC to come to 210 Inverness St NE.

22.    Once the UC arrived at 210 Inverness St NE, the UC observed Woods had just arrived and Woods directed the UC inside 210 Inverness St NE. Once inside 210 Inverness St NE, the UC observed narcotics, believed to be powder cocaine, sitting on a table. Woods then provided the UC with a Palmetto State Armory, model Dagger, 9mm pistol, serial number JJE17675 and in return, the UC provided $650.00 to Woods' associate, who appeared to the UC as the owner of the firearm. Woods is a prohibited

person, having been previously convicted of PWISD cocaine on February 28, 2020, in Forsyth County, North Carolina.

23.    This transaction was audio/video recorded and the funds used for the purchase had been prerecorded.

24.    In summation, Woods has been observed entering and exiting 210 Inverness St NE on four (4) separate dates: October 26, 2022; November 29, 2022; December 2, 2022; and December 13, 2022 (when he fled as a Federal Search Warrant was being executed at the 210 Inverness St NE address). **TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3,** and **TARGET DEVICE 4** were all recovered from the kitchen table along with packaged narcotics for distribution, during the execution of the Federal Search Warrant at 210 Inverness St NE.



## **TECHNICAL TERMS**

21.    Based on my training and experience, I use the following technical term to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that forensic electronic evidence might be on the **TARGET DEVICES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on

the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICES** to human inspection in order to determine whether it contains evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the preceding information, there is probable cause to believe that the

named items and information more fully described in Attachment B, constituting

evidence or fruits of violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §922(g)(1) will be

found in the **TARGET DEVICES** more fully described in Attachment A.

/S/ BENJAMIN L. CROCKER
Benjamin L. Crocker, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Dated: December 14, 2022

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared
before me via reliable electronic means (telephone), was placed under oath, and attested to
the contents of this written affidavit.

Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina